UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF INDIANA, ex rel. SWINEY, STEWART, and GARNER, | ) ) ) |
| | ) |
| *Plaintiffs and Qui Tam Relators*, | ) ) |
| | ) |
| v. | ) |
| | ) |
| COMMUNITY INTEGRATION SUPPORT SERVICES, LLC and TIMOTHY PAUL, | ) ) |
| | ) |
| *Defendants*. | ) |

No. 1:20-cv-00717-JMS-TAB

## ORDER

Relators Rosemarie Swiney, Tonya Stewart, and Arthia Garner (collectively, "Relators") filed this case, on behalf of the United States and the State of Indiana, against Defendants Community Integration Support Services, LLC ("CISS") and Timothy Paul for alleged violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(l)(A), *et seq*., and the Indiana Medicaid False Claims and Whistleblower Protection Act ("IFCA"), Ind. Code § 5-11-5.7-1, *et seq*. [Filing No. 1.] Defendants have filed a Motion to Dismiss under Federal Rules of Civil Procedure 9(b) and 12(b)(6). [Filing No. 37.] Additionally, Mr. Paul has separately filed a Motion for Attorneys' Fees under 31 U.S.C. § 3730(d)(4). [Filing No. 40.] Both motions have been fully briefed and are ripe for the Court's review.

### I.
### MOTION TO DISMISS

Defendants have moved to dismiss each of the Relators' claims pursuant to Rules 9(b) and 12(b)(6). [Filing No. 38.] The Court will address each of Defendants' arguments in turn.

1

### A.  Standard of Review

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief.  The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007.)).  In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff.  *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).  A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570).  The Court may not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief.  *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).  Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz,* 673 F.3d 630, 633 (7th Cir. 2012).  This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Relators' FCA and IFCA claims are governed by the heightened pleading standard governing fraud claims imposed by Federal Rule of Civil Procedure 9, which provides: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  The particularity requirement requires the plaintiff to allege "the who, what, when, where, and how: the first paragraph of any newspaper story." *United States v. Lockheed–Martin Corp.,* 328 F.3d 374, 376 (7th Cir. 2003) (citation omitted).

### B. Background

The following factual allegations are taken from the Complaint and are accepted as true solely for the purpose of this Order.

#### 1. Relators' Employment by CISS

CISS provides support services for individuals with intellectual and developmental disabilities, which allow those individuals to "live independently." [Filing No. 1 at 2.] Mr. Paul is the owner and operator of CISS. [Filing No. 1 at 2.] CISS participates in the Medicare and Medicaid waiver programs. [Filing No. 1 at 3.]

Relators are each former or current CISS employees. [Filing No. 1 at 2-3.] Ms. Garner is a Direct Service Provider ("DSP") for CISS, which entails "the direct provision of assistance services to CISS client[s]." [Filing No. 1 at 3.] Ms. Stewart was a Program Coordinator for CISS, which involved the supervision of DSPs and some direct services to CISS clients. [Filing No. 1 at 3.] Ms. Swiney was a Senior Program Director, which involved managing both the Program Coordinators and the DSPs. [Filing No. 1 at 3.] Ms. Swiney "only occasionally" provided direct services to CISS clients. [Filing No. 1 at 3.] Ms. Swiney was Ms. Stewart's immediate supervisor. [Filing No. 1 at 3.]

#### 2. Relators' Discovery of CISS' Alleged Fraudulent Activities

In August 2018, Ms. Stewart was at work when she overheard someone say, "[t]here aren't any time sheets or narrative notes for these patients" or "words to that effect." [Filing No. 1 at 3.] Ms. Stewart inquired "what the problem was" from CISS Human Resources Director Catherine Johnson, who replied, "[d]on't laugh, you're in this too!" [Filing No. 1 at 3.] Ms. Stewart then realized that invoices were being submitted to the Medicare and Medicaid waiver programs for in-home services that she "supposedly" provided. [Filing No. 1 at 3.] Ms. Stewart raised this issue

with Ms. Swiney, and the two began reviewing records.  [Filing No. 1 at 3.]  During their review, Ms. Stewart and Ms. Swiney found "at least five" CISS clients that had been billed for direct support services that Ms. Swiney or Ms. Stewart had allegedly performed but, in actuality, neither had performed those services.  [Filing No. 1 at 3-4.]  Additionally, the review by Ms. Stewart and Ms. Swiney indicated that CISS had billed for transportation services for patients that were not transported.  [Filing No. 1 at 4.]

Specifically, CISS billed over 120 hours for unperformed services for a single patient, T.B., in a single month.[1]  [Filing No. 1 at 4.]  From August 29 to September 27, 2018, CISS indicated that Ms. Swiney performed "6.5 hours of 'residential habilitation level I' services" for T.B. on nineteen separate days.  [Filing No. 1 at 4.]  However, Ms. Swiney did not perform these services, nor could she have because T.B. was "actually in a day program, and could not have been provided with services by CISS."  [Filing No. 1 at 4.]  From September 29 to October 31, 2018, CISS again billed for "6.5 hours of 'residential habilitation level I' services" allegedly performed by Ms. Swiney for T.B., yet T.B. remained in a "day program."  [Filing No. 1 at 4.]  CISS records further indicated that between July 15 and July 20, 2018, Ms. Swiney transported CISS client M.S. six times, but Ms. Swiney did not transport M.S. "at all."  [Filing No. 1 at 4.]

Ms. Stewart also heard from "some" of the DSPs that she supervises that they observed invoices claiming that they performed services that they did not perform.  [Filing No. 1 at 4.]  Specifically, CISS records reflected that Ms. Garner had performed services with client V.H. for fourteen days during a period that Ms. Garner was not performing services for CISS and V.H. was not a CISS client.  [Filing No. 1 at 4.]  Additionally, CISS records indicated claims for Ms. Garner

---

[1] Relators' Complaint refers to CISS clients by their initials rather than their full names for privacy, [Filing No. 1 at 4], and therefore the Court will do the same in this Order.

performing transportation services over the weekend.  [Filing No. 1 at 4-5.]  However, Ms. Garner does not work during the weekend and does not perform transportation services.  [Filing No. 1 at 5.]

### 3. CISS' Alleged Retaliation against Ms. Stewart and Ms. Swiney

In "late October," Ms. Stewart reported these irregularities to the Government.  [Filing No. 1 at 5.]  She was either suspended or terminated "[a]lmost immediately thereafter."[2]  [Filing No. 1 at 5.]  In "early November," CISS terminated Ms. Swiney's employment.  [Filing No. 1 at 5.]  Relators allege, upon information and belief, that each of the observed reporting irregularities were "submitted as claims by CISS."  [Filing No. 1 at 5.]

### C.  Procedural History

Relators filed their Complaint on behalf of the United States of America and the State of Indiana on March 5, 2020.  [Filing No. 1.]  Relators assert that Defendants violated the FCA and the IFCA by presenting false claims and utilizing false records or statements, which are material to a false claim, to seek payment from the Indiana Medicaid program.  [Filing No. 1 at 5-8.]  Relators also assert that Defendants committed retaliation in violation of the IFCA by "discharging, demoting, suspending, threatening, harassing, or otherwise discriminating" against Ms. Swiney and Ms. Stewart because of their "lawful acts in furtherance of efforts to stop violations of Ind. Code 5-11-5.7-1, *et seq*."  [Filing No. 1 at 9.]  On October 4, 2021, the United States declined to intervene in the present case.  [Filing No. 30.]  The State of Indiana has not indicated a position regarding intervention.  [*See* Filing No. 31.]

---

[2] It is unclear from the record whether Ms. Stewart was suspended or terminated after reporting CISS' alleged misconduct to the Government.  [*Compare* Filing No. 1 at 5 ("CISS suspended [Ms.] Stewart") *with* Filing No. 39 at 11 ("Here, [Ms.] Stewart alleges that she reported the false claims to the government in late October 2018, and was terminated 'almost immediately thereafter'").]

### D.  Discussion

Defendants filed a Motion to Dismiss, seeking the dismissal of all of Relators' claims. [Filing No. 37.]  Defendants argue that dismissal is appropriate for two reasons.  [Filing No. 38.] First, Defendants argue that Relators' allegations fail to meet the heightened pleading requirements for FCA claims under Rule 9(b).  [Filing No. 38 at 5-10.]  Specifically, Defendants argue that FCA claims require particularized allegations of the alleged false claims, and that Relators' allegations lack an "essential element" of an FCA claim because they failed to identify "the who, what, when, where, or how relating to any claim submitted to the government."  [Filing No. 38 at 6.] Defendants argue that while Relators assert "internal record-keeping discrepancies," Relators do not allege any detail regarding which false claims were submitted for repayment from the Government.  [Filing No. 38 at 7-8.]  Further, Defendants argue that Relators failed to allege any specific facts regarding Mr. Paul other than "alleging, upon information and belief, that he owns and manages CISS."  [Filing No. 38 at 10.]  Second, Defendants argue that Relators' claim for retaliation does not meet the pleading standard under Rule 8 because "Relators allege only that they reported irregularities to the government, and subsequently were suspended or terminated," but fail to allege any "operative facts about who at CISS would have known about their alleged communications with the government, which person made the decision to suspend or terminate their employment, or that that person was motivated by the alleged protected activity." [Filing No. 38 at 11.]  Accordingly, Defendants argue dismissal is appropriate.

Relators respond that they did assert their false claim allegations with particularity because they set forth "specific records, identifying specific clients, and providing specific, albeit general, time frames," for services that Relators knew had not been provided, but for which "invoices had been submitted for payment."  [Filing No. 39 at 8-9.]  Regarding their retaliation claim, Relators

respond that they have pled sufficient information because "[o]ne can reasonably infer based on the near immediacy of [Ms. Stewart's] termination [relative to when she reported the false claims to the Government], that she was terminated because of her protected conduct – reporting the false claims to the government" and "after CISS terminated [Ms.] Stewart for her decision to report the false claims, the company looked further into what had happened, and learned that [Ms.] Swiney had played a major role in the disclosure of the false claims, and then terminated [Ms.] Swiney shortly after [Ms.] Stewart's termination." [Filing No. 39 at 11.]

Defendants reply that "[t]elling the difference between an attempt at an operative factual allegation, versus a boilerplate recitation of elements, can sometimes be difficult" but, here, Relators' allegations amount to "pure boilerplate, threadbare recitals of elements, and legal conclusions." [Filing No. 41 at 2.] Defendants argue that the remaining allegations assert that CISS clients were "billed" or that CISS "made claims" for services that purportedly were not provided, but Relators failed to allege that CISS submitted or billed these claims to the Government. [Filing No. 41 at 3-4.] Defendants further argue that "[i]n addition to never alleging a false claim being presented to the government, Relators seek to hide their lack of particularity behind the passive voice." [Filing No. 41 at 5.] Regarding the retaliation claims, Defendants argue that "Relators offer nothing more than speculation grounded in a *post hoc ergo propter hoc* fallacy," and the Seventh Circuit has rejected "suspicious timing" arguments in support of retaliation claims. [Filing No. 41 at 7.] Finally, Defendants argue that Relators did not justify naming Mr. Paul as a Defendant and "have all but conceded that they [leveled] a charge of defrauding the government against [Mr.] Paul for no legitimate reason whatsoever." [Filing No. 41 at 8.]

1.  *The FCA and the IFCA*

The FCA imposes "significant penalties" on those who defraud the Government. *Universal Health Servs., Inc. v. United States,* 579 U.S. 176, 180 (2016).  While the FCA "was not designed to reach every kind of fraud practiced on the Government," *United States v. McNinch*, 356 U.S. 595, 599 (1958), it does impose civil and criminal liability for specifically enumerated acts of fraud.  *See* 31 U.S.C. § 3729(a)(1); *Universal Health Servs. Inc.*, 579 U.S. at 182.  The FCA provides, in relevant part, that:

> any person who:
>
>> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]
>
> * * * *
>
>> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1) (internal citation omitted).

For purposes of the FCA, the term "claim":

> (A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that --
>> (i) is presented to an officer, employee, or agent of the United States; or
>> (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to

advance a Government program or interest, and if the United States
Government --

> (I) provides or has provided any portion of the money or
> property requested or demanded; or
>
> (II) will reimburse such contractor, grantee, or other
> recipient for any portion of the money or property which is
> requested or demanded; and

(B) does not include requests or demands for money or property that the
Government has paid to an individual as compensation for Federal
employment or as an income subsidy with no restrictions on that
individual's use of the money or property.

31 U.S.C. § 3729(b)(2).  The IFCA is the nearly identical Indiana state law equivalent of the FCA.

*See* Ind. Code § 5-11-5-7.1-2 *et. seq.*  Because courts generally apply the same pleading standard

for both federal and state FCA claims, *see, e.g., United States ex rel. Robinson v. HealthNet, Inc.,*

2022 WL 623373, at *2 (S.D. Ind. 2022); *United States v. Wagoner*, 2018 WL 4539819 (N.D. Ind.

2018); *United States ex rel. Goldberg v. Rush Univ. Med. Ctr.*, 929 F.Supp.2d 807, 816 (N.D. Ill.

2013); *United States ex rel. Upton v. Family Health Network, Inc.*, 900 F.Supp.2d 821, 828 (N.D.

Ill. 2012), the Court will address Relators' federal and state claims simultaneously.

### 2.   *The Heightened Pleading Standard for FCA Claims*

As a general rule, a complaint must contain "sufficient factual matter" to state a facially

plausible claim to relief—one that "allows the court to draw the reasonable inference" that the

defendant committed the alleged misconduct.  *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550

U.S. at 570).  "'Plausibility' is not a synonym for 'probability' in this context, but it asks for 'more

than a sheer possibility that a defendant has acted unlawfully.'"  *W. Bend Mut. Ins. Co. v.*

*Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Bible v. United Student Aid Funds, Inc.*,

799 F.3d 633, 639 (7th Cir. 2015)).  Therefore, "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."  *Ashcroft*, 556 U.S. at 678.

(quoting *Twombly*, 550 U.S. at 555).

However, because the FCA is an anti-fraud statute, Relators' claims are subject to the heightened pleading requirements of Rule 9(b). *United States ex rel. Gross. v. AIDS Research All.-Chi.*, 415 F.3d 601, 604 (7th Cir. 2005). Accordingly, Relators must "state with particularity the circumstances constituting fraud or mistake." *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). In adding "flesh to the bones of the word particularity," the Seventh Circuit has "often incanted that a plaintiff ordinarily must describe the who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *Id.* at 441-42.

The heightened pleading requirement for a fraud claim serves three primary purposes: (1) protecting a defendant from "the stigmatic injury that potentially results from allegations of fraud"; (2) minimizing "strike suits" and "fishing expeditions"; and (3) providing notice of the claim to the adverse party. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016); *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1105 (7th Cir. 2014) ("[A] public accusation of fraud can do great damage to a firm before the firm is (if the accusation proves baseless) exonerated in litigation . . ."); *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) ("The purpose (the defensible purpose, anyway) of the heightened pleading requirement in fraud cases is to force the plaintiff to do more than the usual investigation before filing his complaint . . . because fraud is frequently charged irresponsibly by people who have suffered a loss and want to find someone to blame for it"). Fair notice requires a plaintiff who pleads fraud to "reasonably notify the defendants of their purported role in the scheme." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992).

Relators allege two categories of misconduct by Defendants: (1) presentation of false claims and false statements for payment from the Government, which Defendants failed to repay;

and (2) retaliation against Ms. Swiney and Ms. Stewart due to their "efforts to stop violations of" the IFCA. [Filing No. 1 at 5-9.] The Court will address each of Relators' claims as alleged in the Complaint.

### 3. Relators' Claims against Mr. Paul

Turning first to Relators' claims against Mr. Paul, the Court notes that the Complaint contains no specific factual allegations regarding Mr. Paul except for a two-sentence jurisdictional statement, which alleges:

> Defendant [Mr.] Paul is a citizen of the State of Indiana, and on information is the owner and manager of CISS. At all times relevant to this action, [Mr.] Paul has resided in, and conducted business within the geographic boundaries of the Southern District of Indiana, and has been responsible for the management and financial practices of CISS.

[Filing No. 1 at 2.] While Relators refer to Defendants in the plural throughout their claims for relief and directly refer to Mr. Paul in "Count 5: Filing False Medicaid Claims," there are no other substantive factual allegations regarding Mr. Paul in the Complaint and Relators do not allege any specific conduct that Mr. Paul undertook. [See Filing No. 1.] While Relators argue that the "language of the claim is fully sufficient to put [Mr.] Paul on notice that he is a Defendant in this case, and to let him know just what he is accused of," [Filing No. 42 at 1], the Court disagrees.[3]

As discussed above, Relators were obligated to describe the "who, what, when, where, and how" of the alleged fraud upon the Government. *Pirelli,* 631 F.3d at 441. In cases involving

---

[3] Relators failed to respond to Defendants' argument regarding Mr. Paul and, instead, attempt to use their response to Mr. Paul's Motion for Attorneys' Fees to advance arguments not previously raised regarding why Mr. Paul should not be dismissed. [Filing No. 42.] Relator's attempt to assert belated arguments is not well taken. Failure to respond to an argument ordinarily results in waiver. *Terry v. Gary Cmty. Sch. Corp.,* 910 F.3d 1000, 1009 (7th Cir. 2018); *Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010). Accordingly, a fee motion is an inappropriate time to advance arguments that should have been raised in response to a Motion to Dismiss. The Court cautions Relators' counsel against attempting to make extraneous and belated arguments in the future.

multiple defendants, the Complaint "should inform each defendant of the nature of his alleged participation in the fraud." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (noting that "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); *see also United States v. Walgreen Co.,* 417 F. Supp. 3d 1068, 1092–93 (N.D. Ill. 2019) (accord).   A complaint should not "lump multiple defendants together," but should "inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant." *Vicom*, 20 F.3d at 778.

Here, the Complaint is silent as to what Mr. Paul's role, if any, was in the alleged fraud. Simply stating that he is the owner of CISS and that he is "responsible for the management and financial practices of CISS" is insufficient to put Mr. Paul on notice of what fraud he allegedly committed.   Based on the allegations in the Complaint, Mr. Paul's purported involvement in the alleged misconduct could fall anywhere between Mr. Paul serving as the primary individual orchestrating and directing fraudulent submissions to the Government to Mr. Paul being completely unaware of the alleged fraudulent activities.   Based upon the Complaint, there is simply no way to tell what Relators allege Mr. Paul did or did not do.

In short, the Complaint contains insufficient information to state a claim against Mr. Paul under the heightened pleading requirements for fraud claims under Rule 9(b).   Accordingly, Defendants' Motion to Dismiss, [Filing No. 37], is **GRANTED IN PART**, and Relators' claims against Mr. Paul are **DISMISSED**.

### 4.   *Relators' Claims against CISS*

The Court now turns to Relators' remaining claims against CISS.   The Court will first address Relators' claims that CISS purportedly submitted false claims, records, or statements for reimbursement under the Indiana Medicaid program (Counts One through Four).   The Court will

then address Relators' claim that CISS retaliated against Ms. Swiney and Ms. Stewart for reporting

CISS' alleged misconduct to the Government (Count Six).

a.    Relators' FCA Claims against CISS

Turning to Relators' FCA claims against CISS, the Court finds it useful to return to the

"three essential elements" of an FCA claim: (1) the defendant made a false claim in order to receive

money from the Government; (2) the statement was false; and (3) the defendant knew it was false.

*Gross*, 415 F.3d at 604; 31 U.S.C. § 3729(a)(1)(B).  Defendants' Motion centers around the first

element of an FCA claim and turns on whether Relators alleged that a false claim was made *to the*

*Government.*  [Filing No. 38.]

While Relators' Complaint contains substantially more allegations regarding CISS' alleged

conduct than that of Mr. Paul, the only factual allegations concerning claim submission found in

the Complaint are:

- "From [Ms.] Johnsons' remark, and other comments she heard, [Ms.] Stewart came to realize that invoices were being submitted under the Medicare/Medicaid waiver programs for in home services that [Ms.] Stewart had supposedly provided to the patient." [Filing No. 1 at 3.]

- "As a result of their initial review, [Ms.] Swiney and [Ms.] Stewart found at least five CISS clients for whom invoices had been submitted for payment of direct support services that either [Ms.] Swiney or [Ms.] Stewart had allegedly provided." [Filing No. 1 at 3.]

- "[Ms.] Stewart heard from some of the direct support providers who report to her that they had also observed instances in which it appeared they were identified as providing services that they did not provide, but which were still invoiced for payment under the waiver program." [Filing No. 1 at 4.]

- "On information and belief, all of the incidents witnessed and/or discovered by [Relators] were submitted as claims by CISS." [Filing No. 1 at 5.]

The Seventh Circuit has explained that "a plaintiff does not need to present, or even include

allegations about, a specific document or bill that the defendants submitted to the Government"

when "the alleged facts necessarily led one to the conclusion that the defendant had presented claims to the Government." *Presser*, 836 F.3d at 777. For example, in *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849 (7th Cir. 2009), the Seventh Circuit found that an engineer's complaint sufficiently stated a claim under the FCA based upon the complaint's allegations that engine parts were shipped that did not meet the Government's specifications, that the contract with the Government required the employer to certify that the parts met certain specifications to receive payment, and that payment was received. *Id.* at 853-854 (noting that it was "possible that military procurement officers accepted and paid for the turbine blades without" the certification containing false claims, but that the possibility was "remote"). Similarly, in *Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 839 (7th Cir. 2013), the Seventh Circuit found that an employee of an educational training institution adequately pled fraud by alleging that the institution failed to comply with federal law, received funding, and "could only have received federal funding by certifying compliance" with federal law. Finally, in *Presser*, 836 F.3d at 777, the Seventh Circuit found that an employee's complaint was sufficient to support a fraud claim when her complaint alleged that she was told by her employer that "almost all of [the employer's] patients were on Title 19," that "they dealt with Medicare," and that the alleged fraudulent practices "were applied to all patients."

Taken together, Relators' allegations contain sufficient detail to infer that CISS presented the alleged false claims to the Government for payment. Relators have alleged that their jobs involved either managing DSPs or serving as a DSP directly, and that DSPs provide services under the Indiana Medicaid waiver program. [Filing No. 1 at 3.] Relators further identified specific CISS invoices for individual CISS clients (T.B., M.S., and V.H.) that Relators allege were not provided as well as categories of services (transportation services rendered by Mr. Garner) that Relators allege CISS billed for that were not actually rendered. [Filing No. 1 at 4.] While the

14

Complaint is not the absolute model of clarity, it is sufficient to plausibly that Relators' allegations that false claims were "submitted" or "invoiced for payment under the waiver program" are references to claim submission under the Indiana Medicaid program. [*See* Filing No. 1 at 3-5.] At this stage in the litigation, it is enough that Relators' allegations identify the type of false statement, state the basis for their allegations, and permit the inference that "at least one such" claim had been submitted to the Government. *Lusby*, 570 F.3d at 854.

Defendants are correct that, generally, fraud allegations cannot be made upon information and belief. However, the Seventh Circuit has recognized the need for some flexibility to this rule in FCA cases in light of "information asymmetries that may prevent a plaintiff from offering more detail." *Pirelli*, 631 F.3d at 443. Accordingly, the practice is permissible so long as: (1) the facts constituting the fraud are not accessible to the plaintiff, and (2) the plaintiffs provide "the grounds for [their] suspicions." *Id.* (quoting *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992)). Here, Relators make only one fraud allegation upon information and belief, which was that "each of the incidents witnessed and/or discovered by the Relators were submitted as claims by CISS." [Filing No. 1 at 5.] However, Relators explain the context for this conclusion, including: (1) conversations with Ms. Johnson and other CISS employees; (2) review of internal CISS billing records; and (3) Relators' personal knowledge of CISS clients and the direct support services that Relators directly did or did not provide [*See* Filing No. 1 at 3-5.]

The Court agrees with Defendants that allegations of sloppy internal record-keeping practices alone are insufficient to support a claim under the FCA. However, Relators have alleged more than just sloppy record keeping, and their allegations are sufficient to proceed at this stage in the litigation. Accordingly, Defendants' Motion to Dismiss**,** [Filing No. 37], is **DENIED IN**

**PART**, and Counts One through Four under the FCA and the IFCA **SHALL PROCEED** against CISS only.

b.    <u>Relators' Retaliation Claim against CISS</u>

The Court now turns to Relators' retaliation claim. To state a claim for retaliation, Relators must allege that: (1) they engaged in protected conduct; (2) the employer had knowledge of such conduct; and (3) their discharge was motivated, at least in part, by that conduct. *See Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.,* 277 F.3d 936, 944–45 (7th Cir. 2002). Relators must further allege facts that "put [the] employer on notice of potential FCA litigation." *Halasa v. ITT Educ. Servs., Inc.*, 690 F.3d 844, 847 (7th Cir. 2012) (cleaned up).

Here, Relators allege that: (1) Ms. Stewart reported the alleged misconduct to the Government; (2) almost immediately thereafter, CISS suspended Ms. Stewart; and (3) the following month, CISS terminated Ms. Swiney.[4] [Filing No. 1 at 5.] In response to Defendants' Motion, Relators allege that "[o]ne can reasonably infer, based on the near immediacy of [Ms. Stewart's] termination, that she was terminated because of her protected conduct – reporting the false claims to the government" and that, "after CISS terminated [Ms.] Stewart for her decision to report the false claims, the company looked further into what had happened, and learned that [Ms.] Swiney had played a major role in the disclosure of the false claims, and then terminated [Ms.] Swiney shortly after [Ms.] Stewart's termination." [Filing No. 39 at 11.]

Perhaps Relators' conclusion would be a reasonable inference if it did not necessarily rest upon factual details not alleged in the Complaint  principally, that CISS was even aware that Ms. Stewart had reported her allegations to the Government. Moreover, to reach Relators' conclusion as to Mr. Swiney, the Court would be required to stack additional inferences on top of unpled

---

[4] Relators do not allege that Ms. Garner was the victim of retaliation. [Filing No. 39.]

factual assertions, including that: (1) CISS was aware of Ms. Stewart's conduct; (2) after terminating Ms. Stewart, CISS investigated Ms. Stewart's protected conduct; (3) CISS became aware that Ms. Swiney also participated in Ms. Stewart's conduct; and (4) CISS terminated Ms. Swiney, at least in part, due to her participation reporting CISS' alleged misconduct to the Government.  Even construing the Complaint in a light most favorable to Relators, this is simply an inference too far.

"[A] retaliatory complaint must be dismissed if the employer did not know about the whistleblower's protected conduct before it discharged [the whistleblower.]"  *Fanslow v. Chicago Mfg. Ctr., Inc.,* 384 F.3d 469, 483 (7th Cir. 2004).   Here, Relators have simply not alleged sufficient information to infer a causal connection between Ms. Stewart's conduct and the suspension or termination of Ms. Stewart and Ms. Swiney.  Because Relators have failed to plead a *prima facie* element of their retaliation claim, the Court **GRANTS IN PART** Defendants' Motion to Dismiss, [Filing No. 37], and Relators' retaliation claim (Count Six) against CISS is **DISMISSED**.

## II.
### MOTION FOR ATTORNEYS' FEES

In addition to Defendants' Motion to Dismiss, Mr. Paul has separately filed a Motion for Attorneys' Fees under 31 U.S.C. § 3730(d)(4).  [Filing No. 40.]

### A.  Standard of Review

The Court may award a prevailing defendant its reasonable attorneys' fees and expenses if: (1) the Government does not proceed with the action; (2) the person bringing the action conducts the action; and (3) the Court finds that "the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment."  31 U.S.C. § 3730(d)(4).  This provision was intended to supplement Rule 11 and "create a strong disincentive

and send a clear message to those who might consider using the private enforcement provision of [the FCA] for illegitimate purposes." *See* S. Rep. No. 99-345 at 29, 1986 U.S. Code Cong. & Admin. News 5266, 5294. Circuit courts have advised that: "[a]n action is 'clearly frivolous' when 'the result is obvious or the [Relators'] arguments . . . . are wholly without merit.'" *Barnes v. Clark Cnty.*, 2022 WL 73052, at *1 (9th Cir. 2022) (quoting *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002)); *U.S. ex rel. Ubl v. IIF Data Sols.,* 650 F.3d 445, 458 (4th Cir. 2011) (a claim is frivolous if "the relator's claim, when viewed objectively, clearly had 'no reasonable chance of success'"); *U.S. ex rel Bain v. Georgia Gulf Corp.*, 208 F. App'x 280, 283 (5th Cir. 2006) ("A claim is frivolous if it has no arguable support in existing law or any reasonably based suggestion for its extension."). A claim is vexatious or brought primarily for purposes of harassment "when the plaintiff brings the action for an improper purpose, such as to annoy or harass the defendant." *Pfingston,* 284 F.3d at 1006. An example of a vexatious claim may include when the person bringing the action has previously engaged in "a pattern of conduct calculated to harass [the defendant.]" *Millner v. ITT Aerospace/Commc'ns Div. of ITT Corp.*, 124 F.3d 204 (7th Cir. 1997).

### B. Discussion

In support of his Motion for Attorneys' Fees, Mr. Paul argues that in their Motion to Dismiss, Defendants pointed out "the complete lack of any substantive allegation supporting the decision to name [Mr.] Paul as a defendant," but Relators' response offered "no argument or justification" behind the inclusion of Mr. Paul. [Filing No. 40 at 1.] Mr. Paul argues that the standard under 31 U.S.C. § 3730(d)(4) has been met because "Relators did not even attempt to provide a justification for why [he] was publicly named as someone they claimed committed a fraud against the government." [Filing No. 40 at 2.]

18

Relators respond that while they did not specifically refer to Mr. Paul "by name" in their response to the Motion to Dismiss, this fact is irrelevant because the "language of the claim is fully sufficient to put [Mr.] Paul on notice that he is a Defendant in this case, and to let him know just what he is accused of." [Filing No. 42 at 1.] Relators further respond that "[s]ince CISS is a corporate entity, it cannot 'engage' in any physical action; it can only act through its owners, managers, and agents, and by alleging that [Mr.] Paul is the owner and/or manager of CISS, and is responsible for its management and financial practices, the Relators are alleging that [Mr.] Paul, personally, is the individual responsible for [CISS'] actions." [Filing No. 42 at 2.] Additionally, Relators argue that a "fair" reading of the Complaint and their response to the Motion to Dismiss refers to Defendants in the plural, and thus refers to both CISS and Mr. Paul. [Filing No. 42 at 2-3.] Finally, Relators argue that "[g]iven the Relators' allegations in the Complaint, in the unlikely event the Court were to dismiss the claims against [Mr.] Paul, it would be an abuse of discretion to award [Mr.] Paul attorney fees" because Relators claims against Mr. Paul are not "clearly frivolous or clearly vexatious." [Filing No. 42 at 3-4.]

Mr. Paul replies that "Relators offer no argument based on any case or any provision of the [FCA] that even suggests individual liability attaches to the owner of an entity alleged to have submitted false claims to the government." [Filing No. 43 at 2.] Mr. Paul further contends that Relators' argument that they referred to Defendants in the plural comes from "Relators' 'Legal Allegations' section [which] contains pure legal boilerplate and rote recitation of elements," which does not meet the heightened pleading standard for fraud, and that "Relators have waived or conceded . . . [that they] had no lawful reason to name [Mr. Paul] as a fraud defendant, and yet they did it anyway." [Filing No. 43 at 3.]

While Mr. Paul is now a prevailing party in this litigation, the Court disagrees that a fee award is appropriate under the circumstances.  Mr. Paul has offered no evidence that Relators intended to harass him or otherwise brought this case for an improper purpose.  The Seventh Circuit, in *Millner*, 124 F.3d at 204, upheld the District Court's decision to award attorneys' fees under 31 U.S.C. § 3730(d)(4), when it was clear that the relator's "only intent was to harass" the defendant.  Specifically, the Defendant in *Millner* "provided the court with a list of [the relator's] previous acts against" it, which included: (1) picketing outside of the defendant's property for over fifteen weeks; (2) a "defamatory letter-writing campaign directed" at elected officials; (3) previous baseless charges filed with the National Labor Relations Board and the Equal Employment Opportunity Commission; and (4) the relator's repeated admission during his deposition that "he would continue to pursue [defendant] in any way he could." *Id.*  The Seventh Circuit concluded that "[c]learly, [the defendant] has shown that since [the relator's] termination he has pursued a pattern of conduct calculated to harass [the defendant] and cause it as much harm as possible." *Id.*

The conduct at issue in the present case falls well below that in *Millner*.  At worst, Relators' conduct can be characterized as less than precise pleading, but it does not necessarily follow that a fee award under 31 U.S.C. § 3730(d)(4) is appropriate in all circumstances of imperfect claim articulation by a relator.  An award of attorneys' fees under the FCA against the plaintiff is reserved for "rare and special circumstances." *Pfingston*, 284 F.3d at 1006–07.  Furthermore, the standard for dismissal under Rule 12(b)(6) is not the same as the standard for attorneys' fees under the FCA.  *Compare* Fed. R. Civ. P. 12(b)(6) *with* 31 U.S.C. § 3730(d)(4).  Although the Relators have not "nudged [their] claims [against Mr. Paul] . . . across the line from conceivable to plausible" for the purposes of defending a motion to dismiss, *Ashcroft*, 556 U.S. at 680, this does not necessarily render those claims "clearly frivolous" under 31 U.S.C. § 3730(d)(4).  Absent additional

information on this issue from Mr. Paul, the Court is not prepared to determine that Relators' claims

are so lacking in merit as to be clearly frivolous, or that Relators acted in a clearly vexatious or

harassing manner.

Because the Court lacks a sufficient basis to determine that Relators intended to harass Mr.

Paul or otherwise brought this case for an improper purpose, Mr. Paul's Motion for Attorneys'

Fees, [Filing No. 40], is **DENIED**.

### III.
### CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

- Defendants' Motion to Dismiss, [37], is **GRANTED IN PART** and **DENIED IN PART,** as follows:

  - The Motion is **GRANTED** as to Relators' claims against Mr. Paul, and all claims against Mr. Paul are **DISMISSED**[5];

  - The Motion is **DENIED** as to Relators' FCA and IFCA claims against CISS (Counts One through Four), and those claims **SHALL PROCEED** against CISS only;

  - The Motion is **GRANTED** as to Relators' retaliation claim (Count Six), which is **DISMISSED;** and

  - No partial final judgment will enter at this time.

---

[5] Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend their complaint once as a matter of course in response to a motion to dismiss. *Brown v. Bowman*, 2011 WL 1296274, *16 (N.D. Ind. 2011). The 2009 notes to that rule emphasize that this amendment "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion." Here, Relators chose not to revise their allegations relating to their retaliation claim or their claims against Mr. Paul despite being aware of Defendants' arguments in support of dismissal and chose instead to brief the current Motion to Dismiss and adjudicate the issues. Any future amendments are therefore subject to the provisions of subsection 15(a)(2), which requires "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 notes that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Court will not grant leave to amend in instances of: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party; or (5) futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

- Mr. Paul's Motion for Attorneys' Fees, [40], is **DENIED**.

Date: 7/25/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

<u>**Distribution via ECF only to all counsel of record**</u>

22